1
2
3
4
5
6
7
8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JODY GARDNER CLANAHAN,                    CASE NO. CV F 05-0796 LJO DLB

12                    Plaintiff,               **ORDER ON THE PARTIES' POST-TRIAL
                                               MOTIONS**
13        vs.                                  (Docs. 139, 138, 142, 143, 156.)

14   MCFARLAND UNIFIED SCHOOL                  **Trial Setting Conference**
     DISTRICT, ERMALINDA OZUNA,
15   and DAVID DIAZ,                           **Date:  August 22, 2007**
                                               **Time: 8:30 a.m.**
16                    Defendants.              **Dept.: 4 (LJO)**

17   _____/

18                              __INTRODUCTION__

19        In this employment discrimination and retaliation and related action, defendants McFarland

20   Unified School District ("District"),  Ermalinda Ozuna ("Ms. Ozuna") and David Diaz ("Mr. Diaz")

21   bring several motions to attack the $668,342 jury verdict in favor of plaintiff Jody Gardner Clanahan

22   ("Ms. Clanahan").  Ms. Clanahan seeks more than $282,000 in attorneys fees and costs as a prevailing

23   party and seeks to strike the declaration of juror Kevin Bingham, Jr. upon which the defense had relied

24   in part.  In addition, Ms. Clanahan has filed and served papers to oppose the defense motions.  This

25   Court conducted an August 2, 2007 hearing on defense motions for a new trial, for judgment as a matter

26   of law, and to alter or amend the judgment and plaintiff's motion strike/disregard juror declaration.  Ms.

27   Clanahan appeared by counsel Phyllis E. Andelin ("Ms. Andelin"), Law Offices of Phyllis E. Andelin.

28   The District and Ms. Ozuna appeared by counsel Arnold Anchordoquy ("Mr. Anchordoquy"), Clifford

                                         1

& Brown.  Mr. Diaz appeared by counsel Gregory L. Myers ("Mr. Myers"), Myers & Mayfield.  All counsel appeared in person.  For the reasons discussed below, this Court:

    1.    GRANTS the District and Mr. Diaz a new trial based on the trial misconduct of Ms. Andelin;

    2.    GRANTS Ms. Ozuna judgment as a matter of law to dismiss Ms. Clanahan's claims against Ms. Ozuna;

    3.    DENIES the District and Mr. Diaz judgment as a matter of law on Ms. Clanahan's claims against them;

    4.    DISREGARDS juror Kevin Bingham Jr.'s declaration;

    5.    DENIES Ms. Clanahan an award of attorney fees and costs in light of the grant of new trial; and

    6.    SETS a trial setting conference for August 22, 2007 at 8:30 a.m. in Department 4 (LJO).

## BACKGROUND

### Ms. Clanahan's Claims

Ms. Clanahan, a former District high school teacher, claims that Mr. Diaz, a former District vice principal, sexually harassed Ms. Clanahan and that the District and Ms. Ozuna retaliated against Ms. Clanahan after she made sexual harassment complaints.  In this action, Ms. Clanahan pursued against the District claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., for hostile work environment, quid pro quo sexual harassment and retaliation.  Ms. Clanahan pursued a breach of contract claim against the District arising from agreements between her teachers' union and the District.  Ms. Clanahan also pursued negligent infliction of emotional distress and intentional infliction of emotional distress claims against Mr. Diaz and Mr. Ozuna personally.

### Trial And Verdict

This Court conducted a jury trial on Ms. Clanahan's claims during May 21-24 and 29-31, 2007 and June 4-6, 2007.  Ms. Andelin appeared for Ms. Clanahan.  Mr. Anchordoquy appeared for the District and Ms. Ozuna.  Mr. Myers appeared for Mr. Diaz.  With its June 6, 2007 special verdict form, the jury found in Ms. Clanahan's favor on each of her claims and awarded her:

/ / /

2

1.   On her Title VII claims against the District:

    $ 37,334 for lost wages and benefits
     350,000 for emotional pain and mental anguish
      28,170 for future economic loss
_____
    $415,504 Total

2.   On her breach of contract claim against the District:

    $37,334 for past economic loss
     28,170 for future economic loss
_____
    $65,504 Total

3.   $100,000 for past non-economic loss against Mr. Diaz;

4.   $87,334 against Ms. Ozuna ($37,334 past economic loss and $50,000 past non-economic loss).

This Court's clerk entered a June 7, 2007 judgment based on the jury verdict.

**Post-Trial Motions**

The District, Mr. Diaz and Ms. Ozuna (collectively "defendants") timely filed F.R.Civ.P. 50(b) motions for judgment as a matter of law, F.R.Civ.P. 59(a) motions for new trial, and F.R.Civ.P. 59(e) motions to alter or amend the judgment.  Ms. Clanahan filed her motion for attorney fees and costs and bill of costs and her motion to strike/disregard juror declaration.  As discussed below, this Court focuses on the defense motions for new trial on grounds of Ms. Andelin's trial misconduct and Ms. Ozuna's motion for judgment as a matter of law.  This Court's disposition of these matters will render moot most of the other matters raised by defendants and Ms. Clanahan.

**DEFENSE MOTION FOR NEW TRIAL BASED ON MS. ANDELIN'S MISCONDUCT AND MS. CLANAHAN'S MOTION FOR ATTORNEY FEES AND COSTS**

Defendants contend they are entitled to a new trial based on Ms. Andelin's following misconduct:

**Leading Questions**

Ms. Andelin engaged in a campaign of countless improper leading questions, requiring defense counsel to object, in spite of the numerous Court admonishments to cease.  With her leading questions, Ms. Andelin tipped witnesses how to answer.  The improper leading questions also suggested

3

1  inadmissible evidence despite sustained objections.  Leading and other improper questions compelled

2  defense counsel to preserve the record again and again at the risk of impressing on the jury that they

3  attempted to hide evidence.

4                                   **Jury Selection And Opening Statement**

5          During jury selection, Ms. Andelin argued her case.  During her opening statement, Ms. Andelin

6  turned toward and pointed her finger at Mr. Diaz and referred to him as "that man."  Contrary to Ms.

7  Andelin's suggestion, this Court sustained defense objections during her jury selection questioning. This

8  Court further sustained defense objections during Ms. Andelin's opening statement on grounds that Ms.

9  Andelin was argumentative.  The tone of Ms. Andelin's voice and physical stance played a significant

10  part in the Court's ruling on defense counsel's objections.

11                                   **Restricting Defense Expert Testimony**

12          Most of the Thursday, May 31, 2007 afternoon session was reserved for defense expert

13  psychiatrist Howard Terrell, M.D. ("Dr. Terrell").  Since jurors, days earlier, had requested to leave at

14  4 p.m. on May 31, 2007, agreement was reached to finish Dr. Terrell's testimony that afternoon to avoid

15  the need for him to return Monday, June 4, 2007.[1]  During the early afternoon of May 31, 2007,Ms.

16  Andelin extended her cross-examination of the witness prior to Dr. Terrell to erode time for Dr. Terrell.

17  This Court was forced to give defendants 50 shared minutes and Ms. Clanahan 50 minutes for their

18  respective examinations of Dr. Terrell.  The District and Ms. Ozuna correctly note that Dr. Terrell's

19  testimony "was not developed properly because of the misrepresentation made by counsel for plaintiff

20  to the Court as to the time that she needed to cross-examine Mr. Schiffman [prior witness]."

21                                              **Snide Remarks**

22          Ms. Andelin made snide remarks when questioning defense witnesses and was repeatedly

23  admonished not to do so.  This Court warned Ms. Andelin that such continuous conduct would result

24  in sanctions.  Particularly troubling, Ms. Andelin and Ms. Clanahan laughed aloud during Mr. Myers'

25  questioning, compelling Mr. Myers to stop and inquire what had occurred.  This Court admonished Ms.

26  Andelin and Ms. Clanahan to conduct themselves appropriately.

27

28  _____

[1]        This Court's weekly criminal calendar prevented it to conduct trial on Friday, June 1, 2007.

**Disobedience Of In Limine Ruling**

This Court's in limine ruling limited evidence of Mr. Diaz' prior acts of alleged sexual harassment to purposes of the District's notice of such conduct. Ms. Andelin called Shari Gonzales ("Ms. Gonzales"), a District teacher, to testify about Mr. Diaz' conduct toward Ms. Gonzales, and in particular, such conduct before either was married (a time irrelevant to this action). Ms. Andelin represented to the Court and to defense counsel that Ms. Gonzales had complained to the District about Mr. Diaz' conduct. In an on-the-record sidebar conference, this Court suggested to and requested that Ms. Andelin ask initially whether Ms. Gonzales notified the District of Mr. Diaz' conduct. Ms. Andelin ignored this Court's request and continued to inquire into specific interactions between Mr. Diaz and Ms. Gonzales. Ms. Andelin proceeded to ask improper leading questions. When Ms. Gonzales was asked if she had provided the District notice, Ms. Gonzales denied that she had. Ms. Andelin did not attempt to clarify or expand on Ms. Gonzales' denial. Ms. Andelin did not attempt to refresh Ms. Gonzales' alleged statement that she reported Mr. Diaz' conduct to a District principal. The statement was allegedly made to Ms. Andelin two evenings prior to Ms. Gonzales' testimony during a pre-trial discussion between Ms. Andelin and Ms. Gonzales. This Court struck Ms. Gonzales' testimony. At her post-trial deposition, Ms. Gonzales indicated that Ms. Andelin failed to instruct her not to testify at trial as to Mr. Diaz' conduct which she did not report to the District.

**"Secret Admirer" Envelope**

During questioning of Anell Chavez ("Ms. Chavez"), Ms. Andelin represented that she had received from Ms. Chavez on the date of Ms. Chavez' testimony an envelope for a card which Ms. Chavez had received from Mr. Diaz and which Ms. Chavez in turn had given to District board president Linda Genel ("Ms. Genel"). The envelope indicated that it was from Ms. Chavez' "secret admirer." Defendants objected to the envelope in that Ms. Andelin had neither produced it during discovery nor identified it as an exhibit. Although Ms. Genel denied receiving a card from Ms. Chavez, Ms. Andelin asked Ms. Chavez if she had seen the excluded envelope and read the "secret admirer" notation. Defense counsel objected, and this Court directed the jury to disregard the "secret admirer" reference.

**Missing Yearbook Funds**

Olivia Shoaf Montes ("Ms. Montes"), a former District receptionist and bookkeeper, testified

1  that Ms. Clanahan telephoned Mr. Diaz three or four times a day.  In an apparent attempt to discredit Ms.

2  Montes, Ms. Andelin inquired on cross-examination to the effect that Ms. Montes left her District

3  employment after yearbook and cheerleading funds were discovered missing.  Ms. Andelin was aware

4  and admitted to the Court that Ms. Montes had neither been accused of theft nor terminated and that Ms.

5  Andelin had no specific, concrete evidence that Ms. Montes had stolen anything.  In addition, Ms.

6  Andelin admitted that she had no information that anyone had accused Ms. Montes.  Although Ms.

7  Clanahan's opposing papers disagree with this statement, the record bears out this scenario.  Ms.

8  Andelin's proposed remedy to the Court was to ask Ms. Montes whether Ms. Montes was a thief and

9  "if she says no, we move on."  Again, this Court admonished the jury to disregard the groundless

10 suggestion.

11                                        **Mr. Diaz' Relatives**

12      Ms. Andelin engaged in misstatement and misleading questions to reference that Mr. Diaz' wife

13 and other family members, who worked at the middle school where Ms. Clanahan was transferred,

14 subjected Ms. Clanahan to purported mistreatment.

15                                        **Closing Argument**

16      During Mr. Anchordoquy's closing argument, Ms. Andelin made numerous objections, which

17 were overruled, in an obvious attempt to distract the jury and Mr. Anchordoquy.

18                                           **Summation**

19      In short, defendants argue that Ms. Andelin's misconduct was not and could not be cured by this

20 Court's instructions and admonitions to the jury throughout the trial.  They further argue that Ms.

21 Andelin "engaged in a pre-meditated attempt from the outset to argue the case, intimidate witnesses and

22 get before the trier of fact evidence that had been stricken or was violative of a prior motion in limine,

23 engaged in improper impeachment of witnesses, and attempted to distract the jurors by her actions."  At

24 oral argument, Mr. Myers succinctly argued defendants' position that Ms. Andelin did not object often

25 during trial because she recognized potential harm from objecting before the jury.  Yet, Ms. Andelin

26 placed defense counsel in positions to object over and over again.

27                                       **New Trial Standards**

28      F.R.Civ.P. 59(a) authorizes granting a new trial and provides in pertinent part:

1
2
3

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . .

4   The Ninth Circuit Court of Appeals has commented: "[W]hen an appellate court ponders the

5   probable effect of an error on a civil trial, it need only find that the jury's verdict is more probably than

6   not untainted by the error." *Abromson v. American Pacific Corp.*, 114 F.3d 898, 903 (9th Cir. 1997),

7   *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1040 (1998) (quoting *Haddad v. Lockheed Calif. Corp.*, 720 F.2d

8   1454, 1459 (9th Cir. 1983)).

9   The grant of a new trial is "confided almost entirely to the exercise of discretion on the part of

10  the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d

11  193 (1980).  "The trial court's decision, therefore, will not be reversed absent a showing of abuse of

12  discretion." *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990); *see Hard v. Burlington*

13  *N.R.R.*, 812 F.2d 482, 483 (9th Cir. 1987).  An appellate court will uphold a district court's granting a

14  new trial if any of the district court's grounds are "reasonable." *Silver Sage Partners v. City of Desert*

15  *Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

16  On a new trial motion, a district court has the right and duty "to weigh the evidence as he saw

17  it . . ." *Murphy*, 914 F.2d at 187 (quoting *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d

18  246, 256 (9th Cir. 1957), *cert. denied*, 356 U.S. 968, 78 S.Ct. 1008 (1958)).  "The judge can weigh the

19  evidence and assess the credibility of witnesses, and need not view the evidence from the perspective

20  most favorable to the prevailing party." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d

21  1365, 1371 (9th Cir. 1987).  Even if substantial evidence supports the jury's verdict, a district court may

22  grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence

23  which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *United*

24  *States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir.), *cert. denied*, 528 U.S. 1047, 120 S.Ct. 582

25  (1999).

26  A "party is entitled to a new trial when opposing counsel's conduct causes prejudice to that party

27  . . . thereby unfairly influencing its verdict." *Tesser v. Board of Educ. Of City School Dist. of City*

28  *of New York*, 370 F.3d 314, 321 (2nd Cir. 204) (citing *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2nd

1  Cir. 1998) ('[f]ederal courts have recognized unfair prejudice and ordered new trials")); *see California*

2  *Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995) (district court "did not abuse its

3  discretion in granting a new trial based on attorney misconduct"); *Alejo Jimenez v. Heyliger*, 792 F.Supp.

4  910, 919-920 (D.P.R. 1992) (improper injection of irrelevant allegations about opposing party); *Pappas*

5  *v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 540-541 (2nd Cir. 1992) ("when the conduct of

6  counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new

7  trial should be granted.")  "The judge's duty is essentially to see that there is no miscarriage of justice.

8  If convinced that there has been then it is [the judge's] duty to set the verdict aside . . . ."  *Smith v.*

9  *Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988).

10      To evaluate prejudice from attorney misconduct, courts consider "the totality of circumstances,

11  including the nature of the comments, their frequency, their possible relevancy to the real issues before

12  the jury, the manner in which the parties and the court treated the comments, the strength of the case,

13  and verdict itself." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (quoting *Puerto*

14  *Rico Aqueduct & Sewer Auth. v. Construction Lluch, Inc.*, 169 F.3d 68, 82 (1st Cir. 1999)).  Often "a

15  combination of improper remarks" will demonstrate prejudicial impact.  *Fineman v. Armstrong World*

16  *Indus., Inc.*, 980 F.2d 171, 207 (3rd Cir. 1992).  "Repeated improprieties by one counsel severely

17  prejudice his adversary." *Koufakis v. Carvel*, 425 F.2d 892, 901 (2nd Cir. 1970).

18      At times, attorney misconduct may be too prejudicial to be cured with instructions.  The

19  "cautionary instructions given to the jury proved to be insufficient to immunize the jury from the

20  improper and inflammatory remarks of plaintiffs' counsel." *Fineman*, 980 F.2d at 206.  Where

21  misconduct permeates the proceedings, the jury is "necessarily prejudiced." *Anheuser-Busch, Inc. v.*

22  *Natural Beverage Distributors*, 69 F.3d 337, 346 (9th Cir. 1995).  Constant objections are unnecessary

23  in that they "could antagonize the jury." *Anheuser-Busch*, 69 F.3d at 346.

24      Great deference is given to the trial judge to gauge prejudicial effect of attorney misconduct.

25  "We recognize that the trial judge has considerable discretion in determining whether conduct by counsel

26  is so prejudicial as to require a new trial." *Draper v. Airco, Inc.*, 580 F.2d 91, 94 (3rd Cir. 1978).

27  "Because the trial judge was present and able to judge the impact of counsel's remarks, we defer to his

28  assessment of the prejudicial impact." *Fineman*, 980 F.2d at 207.  "We recognize the trial court's

8

superior vantage point when evaluating the possible impact of the alleged prejudicial conduct.  A printed record is unable to replicate in full all the circumstances – for example, tones of voices, demeanor of witnesses and jurors and the like – that occur in the course of an unfolding trial."  *Pappas*, 963 F.2d at 540.

### Ms. Andelin's Permeating Misconduct

Defendants have properly and correctly characterized the above noted many instances of Ms. Andelin's misconduct.  Ms. Andelin asked multitudinous improper questions, in particular coaching, leading questions to invoke distracting objections and Court rulings and admonitions.  There were continued references to exhibits not approved at the pretrial conference.  Yet Ms. Andelin was undaunted and continued her campaign of impropriety.  Ms. Andelin further provoked distraction with sneering, disparaging comments to and about witnesses and opposing counsel and physical gestures and facial expressions to denigrate this Court's decorum.  Again and again, in and out of the jury's presence, this Court admonished Ms. Andelin to cease her misconduct and to conduct herself as an officer of the court. Ms. Andelin's blatant ignoring of this Court's admonitions resulted in this Court's ultimate detailed contempt warning, after which Ms. Andelin continued to uproot expectations of decency, civility and appropriate behavior.  Of particular concern, during her closing argument, Ms. Andelin inaccurately asserted that Mr. Anchordoquy had referred to inadmissible evidence, thereby herself divulging the inadmissible evidence.

One glaring example of Ms. Andelin's misconduct was her handling of Ms. Gonzales.  As a reminder, this Court's in limine ruling limited evidence of Mr. Diaz' alleged prior sexual harassment to purposes of the District's notice of it. During a sidebar conference, Ms. Andelin mislead this Court that Ms. Gonzales would testify that Mr. Diaz made sexual advances toward Ms. Gonzales during his District employment and that she reported it to the District:

THE COURT: Let me ask it straight out.  Where is the evidence – what is the evidence going to be that this is all about notice and not just about trashing Diaz?

MS. ANDELIN: As far as I understand, she did complain to the District.  And that's it.  And I will move on.

THE COURT: You are going to ask her that question now?

1          MS. ANDELIN: That's it.  I'm going to ask her what happened, obviously.

2          THE COURT: Wait.  Before you do, why don't you say, "Before we go on to the

3   specifics of what occurred, did you ever complain to anybody or notify anybody at the

4   school District about it?"

5          . . .

6          THE COURT: Isn't that more relevant?  What they were told, what did you tell

7   them, other than what happened, because if something happened and you didn't tell

8   them, it doesn't make any difference.

9          MS. ANDELIN: If she said she did notify the District – they have had a lot of

10  failure of memory this morning – if she said she didn't notify the District, I will move on.

11  When Ms. Andelin subsequently (yet not immediately) addressed the notice issue, Ms. Gonzales

12  denied that she had complained to the District about Mr. Diaz:

13         Q.  And did you notify the school district of this conduct?

14         A.  No, because he was not my supervisor.

15         MR. MYERS: Your Honor, I will move to strike all testimony of this witness.

16         MR. ANCHORDOQUY: Join.

17         THE COURT: It is stricken.

18         . . .

19         MR. ANCHORDOQUY: Excuse me, you Honor.  Could you indicate to the

20  jurors – and I don't want to be telling the Court what to do – that all testimony, not just

21  that last answer.

22         THE COURT: Ladies and gentlemen, that part of her testimony was only being

23  offered on the issue of notice to the school district.  She has indicated that the school

24  district was not given notice.  Therefore, all of her testimony thus far of substance has

25  now been stricken.

26  Ms. Anchordoquy later cross-examined Ms. Gonzales on her telephone conversation with Ms.

27  Andelin two nights prior to her testimony:

28         Q.     How long was the conversation?

10

1        A.     Oh, how long?  One hour approximately.

2        Q.     And you, basically, told her, during that phone conversation what you

3              told us today?

4        A.     Correct.  Well, a little bit more.

5 On Mr. Myers' mistrial motion, Ms. Andelin claimed that Ms. Gonzales changed her story on

6 the witness stand:

7        THE COURT: Ms. Andelin, let me ask you a question.  Did you have any

8 indication whatsoever that that witness [Ms. Gonzales] was going to indicate that there

9 had been notice to the school district with regard to what she was talking about on any

10 allegation by her, recollection, or evidence, that there had been improper advances made

11 by Mr. Diaz?

12        MS. ANDELIN: I had no notice.  And, to the contrary, it was represented to me

13 that the conduct occurred actually not in 1998 or '96, but more recent in time, and that

14 she made a complaint.  That's what she told me.

15        So, she didn't say what she told me.

16        I told you when we were there that was my offer of proof, but she – this happens.

17 But I don't believe I did anything wrong at all.  I was simply using the information that

18 the witness gave to me, what, last night or the night before.

19        These witnesses are very difficult to get ahold of.  And, of course, I talk to the

20 witnesses.

21        But she told me – I did not know it was that far back in time, number one, I was

22 very surprised to hear that.

23        And number two, she told me she had notified somebody **at the District office**.

24 (Bold added.)

25 In Ms. Gonzales' post-trial deposition, Ms. Gonzales acknowledged that Ms. Andelin failed to

26 fulfill Ms. Andelin's duty to inform Ms. Gonzales as to the limited purpose of evidence regarding Mr.

27 Diaz' alleged sexual harassment:

28        Q.  When Ms. Andelin was talking with you on the Sunday before you testified

1      . . . did she say anything to you about motions in limine?

2              A.  No.

3              Q.  Did she explain to you that there were certain things that you could not testify

4      to by the Court's instruction.

5              A.  No.

6              Q.  In other words, did she tell you that you could not testify about any of Mr.

7      Diaz' conduct that was not reported to the District?

8              A.  No, she didn't.

9              During oral argument, Ms. Andelin argued that her confusion of the position which Mr. Cardenas

10     held (superintendent vs. principal) lead to the misunderstanding.  Had Ms. Andelin fulfilled her duty,

11     the legal and factual confusion at trial in and out of the jury's presence would have been prevented.

12                                          **Prejudice**

13     Serious risks and severe results arise from failure to:

14     1.      Follow the Federal Rules of Civil Procedure and Federal Rules of Evidence;

15     2.      Respect the mandates of the Pretrial Order;

16     3.      Obey in limine rulings;

17     4.      Abide by this Court's in-trial evidentiary rulings; and

18     5.      Adhere to Court admonitions in and out of the jury's presence.

19     Far worse, when a Court officer flaunts her duty to ensure that a witness comply with a central in limine

20     ruling, and thereafter misrepresents that she did comply, such misconduct further strengthens opposing

21     counsel's contentions that an unlawful bell was rung intentionally to prejudice the jury.

22             In addition, throughout the trial, and now in her post-trial papers, Ms. Andelin takes the position

23     that she was a victim of strict enforcement of the rules of evidence "and otherwise."  (Footnote 3 of

24     "Plaintiff's Memorandum In Opposition to Defendants' Motions To Amend Or Alter Judgment.")  The

25     trial record is replete with initial court reminders and requests, subsequent and escalating admonitions,

26     and ultimate orders and a warning of contempt that Ms. Andelin comply with the rules of evidence, obey

27     rulings on motions, respect the Federal Rules of Civil Procedure, stay within the parameters of the

28     pretrial order, and comport herself as an Officer of the Court.  When she either could not, or would not

                                             12

1   comply, she claimed misunderstanding, legitimate mistake, lack of communication, failure of

2   recollection, illness, and ultimately, being a victim of unfair treatment, first by opposing counsel, then

3   by defense witnesses, and ultimately by the Court.  Ms. Andelin, during oral argument, asserts that she

4   could find no case where a new trial was granted based on leading questions.  Although this order is not

5   based solely on grounds of leading questions, this Court finds that it certainly could be.  Using Ms.

6   Andelin's words, "a litany of objections" followed the litany of improper questions.  Each and every

7   instance of noncompliance resulted in unfair advantage in Ms. Clanahan's favor, and none of her

8   misconduct caused her disadvantage.  This factor further indicates that the cited instances were

9   calculated and intentional.  No rendered reason for noncompliance, individually or collectively, excuses

10  the attorney misconduct that occurred during trial.

11      Under the totality of the circumstances, Ms. Andelin's cumulative misconduct from jury selection

12  to closing argument circumvented the trial's purpose – to find the truth while following the law.  This

13  activity is best characterized as "synergistic misconduct."  The end result was a tainted and unfairly

14  influenced jury verdict.  Ms. Andelin's misconduct so permeated the proceedings that defense objections

15  and Court remedial measures were insufficient to immunize the jury.  The flavor of counsel misconduct

16  influenced the jury by passion, prejudice and consideration of precluded evidence and counsel-created

17  suggestions.  *Anheuser-Busch*, 69 F.3d at 340; *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir.

18  1984); *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965).  A miscarriage of justice

19  would arise if the verdict were allowed to stand.  Ms. Andelin's misconduct constituted an intentional

20  diminution of the duty to abide by and respect the Rule of Law.

21                                              **Order**

22      For the reasons discussed above, this Court:

23      1.      GRANTS the District and Mr. Diaz a new trial on all of Ms. Clanahan's claims against

24              them;[2]

25      2.      DENIES the District and Mr. Diaz' other requested relief on grounds that this ruling

26              renders such relief moot or that the District and Mr. Diaz failed to substantiate factual

27  ────────────────

28      [2]   As discussed below, Ms. Ozuna will not be a party to the new trial in that she is granted judgment as a
        matter of law.

1    and legal grounds for requested relief, including judgment as a matter of law;

2    3.    DENIES Ms. Clanahan's motion for attorney fees and costs in that the grant of new trial

3          renders Ms. Clanahan's motion moot; and

4    4.    SETS a trial setting conference for August 22, 2007 at 8:30 a.m. in Department 4 (LJO).

5          The parties' counsel may appear by telephone by arranging a one-line conference call and

6          telephoning the Court at (559) 498-5680.

7    **This Court admonishes Ms. Andelin that a repeat performance of her misconduct during**

8    **the new trial will result in sanctions of contempt and dismissal of Ms. Clanahan's claims.  Should**

9    **that occur, Ms. Clanahan's potential remedy will be in a different forum, and against a different**

10   **defendant.**

11   **MS. CLANAHAN'S MOTION TO STRIKE/DISREGARD JUROR DECLARATION**

12   Ms. Clanahan has filed motions to strike or disregard the declaration of juror Kevin Bingham,

13   Jr., pursuant to F.R.Evid. 602(b) and 606(b).  The motion under F.R.Evid. 602(b) was filed apparently

14   in error and is disregarded.

15   Ms. Andelin requested oral argument.  Oral argument is not needed, and Ms. Andelin's request

16   is denied.

17   F.R.Evid. 606(b) is pertinent and on point.  Defense counsel's request to file the juror declaration

18   is precluded by statute.  In reply papers, defense counsel withdraws the declaration.

19   This Court DISREGARDS juror Kevin Bingham, Jr.'s declaration.

20   At page 4, line 16 of the motion to strike the declaration, Ms. Clanahan incorrectly states that

21   "each juror was polled by the Court sua sponte on every answer to every question on the Special Verdict

22   form."  The polling was conducted only when counsel answered the Court's inquiry about polling in the

23   affirmative.  Such incorrect statement does not affect this Court's decision to disregard the juror

24   declaration.

25   **MS. OZUNA'S AND MR. DIAZ' MOTIONS FOR JUDGMENT AS MATTER OF LAW**

26   Ms. Ozuna seeks post-trial judgment as a matter of law on Ms. Clanahan's claims of negligent

27   and intentional infliction of emotional distress.  F.R.Civ.P. 50(a) addresses judgment as a matter of law

28   in jury trials and provides:

14

1         If a party has been fully heard on an issue during a jury trial and the court finds
2   that a reasonable jury would not have a legally sufficient evidentiary basis to find for the
    party on that issue, the court may:

3         (A) resolve the issue against the party; and

4         (B) grant a motion for judgment as a matter of law against the party on a claim
    or defense that, under the controlling law, can be maintained or defeated only with a
5   favorable finding on that issue.

6   F.R.Civ.P. 50(b) permits a renewed, post-trial motion for judgment as matter of law:

7         If the court does not grant a motion for judgment as a matter of law made under
    subdivision (a), the court is considered to have submitted the action to the jury subject
8   to the court's later deciding the legal questions raised by the motion.  The movant may
    renew its request for judgment as a matter of law by filing a motion no later than 10 days
9   after the entry of judgment . . .

10         In ruling on the renewed motion, the court may;

11         (1) if a verdict was returned;

12         (A) allow the judgment to stand,

13         (B) order a new trial, or

14         (C) direct entry of judgment as a matter of law . . .

15       Granting a F.R.Civ.P. 50(b) motion is proper when "the evidence, together with all reasonable

16   inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that

17   the moving party was entitled to judgment."  *PH Group Ltd. v. Birch*, 985 F.2d 649, 653 (1st Cir. 1993);

18   *Down East Energy Corp. v. Niagara Fire Ins. Co.*, 176 F.3d 7, 15 (1st Cir. 1999).  The Ninth Circuit

19   Court of Appeals has commented: "Judgment as a matter of law is appropriate when the evidence,

20   construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion,

21   which is contrary to the jury's verdict."  *Omega Evntl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1161 (9th

22   Cir. 1997), *cert. denied*, 525 U.S. 812, 119 S.Ct. 46 (1998); *Gilbrook v. City of Westminister*, 177 F.3d

23   839, 864 (9th Cir.), *cert. denied*, 528 U.S. 1061, 120 S.Ct. 614 (1999).

24       A F.R.Civ.P. 50(b) motion should not be granted unless there is "either an utter lack of evidence

25   supporting the verdict, so that the jury's findings could only have resulted from pure guess-work, or the

26   evidence must be 'so overwhelming that reasonable and fair-minded persons could only have reached

27   the opposite result.'"  *Doctor's Associates, Inc. v. Weible*, 92 F.3d 108, 112 (2nd Cir. 1996), *cert. denied*,

28   519 U.S. 1091, 117 S.Ct. 767 (1997) (quoting *Baskin v. Hawley*, 807 F.2d 1120, 1129 (2nd Cir. 1986)).

1   "A party can obtain judgment as a matter of law in its favor 'only if the proof is all one way or so

2   overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion.'"

3   *Strickland Tower Maintenance v. AT&T Communications, Inc.*, 128 F.3d 1422, 1426 (10th Cir. 1997)

4   (quoting *Conoco Inc. v. ONEOK, Inc.*, 91 F.3d 1405, 1407 (10th Cir. 1996)).

5           The summary judgment standard "mirrors" the standard for F.R.Civ.P. 50(a) and (b) motions.

6   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251, 106 S.Ct. 2505, 2511 (1986); *Piesco v. Koch*,

7   12 F.3d 332, 341 (2nd Cir. 1993); F.R.Civ.P. 50 Adv. Comm. Notes (1991 Amend.).

8           The jury found that Ms. Ozuna did not "act within the course and scope of her employment with

9   the School District when plaintiff was harmed by her?"  However, the evidence, construed in the best

10  light and in Ms. Clanahan's favor, overwhelmingly demonstrates that all of Ms. Ozuna's conduct and

11  interactions with Ms. Clanahan were in Ms. Ozuna's capacity as a District employee.  As a matter of

12  law, the evidence points to no other conclusion.

13          Ms. Ozuna asserted as a defense that Ms. Clanahan's claims are barred in the absence of

14  California Tort Claims Act claim against Ms. Ozuna.  The California government claims statutes require

15  timely filing of a proper claim as condition precedent to maintenance of an action.  Cal. Gov.Code, §§

16  905, 911.2, 945.4 (presentment of a written claim to the applicable public entity is required before a "suit

17  for money or damages may be brought against a public entity"); *County of San Luis Obispo v. Ranchita*

18  *Cattle Co.*, 16 Cal.App.3d 383, 390, 94 Cal.Rptr. 73 (1971).  Compliance with the claims statutes is

19  mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944).  Failure to file a claim

20  is fatal to the cause of action.  *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409

21  (1961).

22          Pendent state law tort claims against a public employee are barred unless presented to the proper

23  public entity prior to commencing suit.  *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627

24  (9th Cir. 1988); *see Neal v. Gatlin*, 35 Cal.App.3d 871, 877-78, 111 Cal.Rptr. 117, 122 (1973) (where

25  public employee was acting within employee's express or implied authority, notwithstanding wrongful

26  nature of the act, complaint based on such act was properly dismissed for failure to allege filing of claim

27  with employing public entity).

28          Ms. Ozuna's conduct giving rise to Ms. Clanahan's claims against her was in Ms. Ozuna's

official capacity as an employee of the District, was not in her personal capacity, and which therefore required compliance with the California Tort Claims Act to pursue negligent and intentional infliction of emotional distress claims against Ms. Ozuna.  Ms. Clanahan's non-compliance with the California Tort Claims Act bars her claims against Ms. Ozuna thereby entitling Ms. Ozuna to judgment as a matter of law.

The same cannot be said for Mr. Diaz.  The evidence, construed in Ms. Clanahan's favor, does not reveal that Mr. Diaz acted in his official capacity as a District employee at the time of events giving rise to Ms. Clanahan's negligent and intentional infliction of emotional distress claims.  The evidence on the course and scope issue as to Mr. Diaz is not so lacking to render the jury's verdict on the course and scope issue a matter of guess work or an unreasonable result.  As such, the California Tort Claims Act does not bar Ms. Clanahan's tort claims against Mr. Diaz.  Moreover, Mr. Diaz has failed to substantiate other grounds for judgment as a matter of law in his favor.

### Order

For the reasons discussed above, this Court:

1.   GRANTS Ms. Ozuna judgment as a matter of law on Ms. Clanahan's claims against Ms. Ozuna for negligent and intentional infliction of emotional distress;

2.   DENIES Mr. Diaz judgment as a matter of law on Ms. Clanahan's claims against Mr. Diaz for negligent and intentional infliction of emotional distress; and

3.   DIRECTS this Court's clerk to enter judgment in favor of defendant Ermalinda Ozuna and against plaintiff Jody Gardner Clanahan.

IT IS SO ORDERED.

**Dated:    August 3, 2007**                        **/s/ Lawrence J. O'Neill**
                                                    UNITED STATES DISTRICT JUDGE